## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JORDAN HARDMAN,                    )
                                  )
                    Plaintiff,    )
                                  )
v.                                )          Case No. 19-2251-KHV-TJJ
                                  )
UNIFIED GOVERNMENT OF             )
WYANDOTTE COUNTY AND              )
KANSAS CITY, KANSAS, and          )
STEVEN RIOS,                      )
                                  )
                    Defendants.   )

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Compel Document Production from Defendant

Unified Government of Wyandotte County and Kansas City, Kansas (ECF No. 71). Plaintiff

moves the Court to order Defendant Unified Government of Wyandotte County and Kansas City,

Kansas (the "UG") to conduct certain searches related to Plaintiff's First Request for Production

of Documents ("RFPD") No. 24 and produce relevant documents captured by those searches.

Plaintiff also seeks relief with regard to the UG's alleged improper handling of privileged info

and designation of confidential documents. The motion is now fully briefed, and the Court also

conducted a telephone status conference on August 7, 2020 at the request of Plaintiff's counsel.

Although the discussion during the conference included issues other than those briefed in the

pending motion, the Court inquired as to issues regarding the UG's privilege log and whether the

UG has waived its objections as to privilege regarding RFPD No. 24. For the reasons discussed

below, the Court grants in part and denies in part Plaintiff's motion to compel.

## I.    Procedural History

Plaintiff served her First RFPD on the UG on October 30, 2019.[1] Plaintiff's RFPD No. 24 requested:

> "If not already provided, all communications, including emails and text messages, concerning the factual allegations or claims at issue in this lawsuit among or between: Plaintiff and Unified Government employees; or Unified Government employees and any other person, including but not limited to the individuals identified on the parties' respective Rule 26 disclosures."[2]

The parties informally agreed to extensions of time for the UG to respond to Plaintiff's RFPD, and the Court granted as unopposed an additional request for extension of time for the UG to respond,[3] making the UG's responses to Plaintiff's RFPD due January 17, 2020. The UG served its responses on that date.[4] Its response to Plaintiff's RFPD No. 24 stated:

> "Defendant objects to the extent this request asks for communications protected by the attorney client privilege or the work product doctrine. In addition to the documents already produced, potentially responsive e-mails are currently being reviewed and Defendant's response to this request will be supplemented as soon as that review is complete."[5]

Plaintiff did not produce a privilege log. On February 3, 2020, Plaintiff sent the UG a golden rule letter outlining her concerns with some of the UG's responses, including the UG's response to RFPD No. 24.[6] Specifically, Plaintiff stated: "When will your review of the additional emails be completed? Again, please produce a privilege log."

---

[1] ECF No. 36.

[2] ECF No. 72-3 at 8.

[3] *See* ECF No. 51.

[4] *See* ECF No. 72-3.

[5] ECF No. 72-3 at 8.

[6] ECF No. 72-6 at 4–5.

The parties conferred by telephone on February 10, 2020. On February 12, 2020, Plaintiff's counsel emailed the Court requesting a telephone conference to discuss, among other things, the UG's document production. The Court conducted a telephone conference with the parties on February 14, 2020.[7] Before the conference, the parties jointly requested that the Court set a deadline of March 13, 2020 for the UG to produce all emails responsive to Plaintiff's RFPD No. 24, including a final privilege log.[8] Additionally, the parties agreed that once the UG disclosed all of the search terms and custodians it had used to search for emails responsive to RFPD No. 24, Plaintiff could make specific requests that additional searches be conducted using new terms.[9] Following the conference, the Court entered an Amended Scheduling Order, extending the deadlines for the parties to complete discovery and for Plaintiff to file a motion to compel regarding the UG's responses to her RFPD.[10] Plaintiff sent the UG a letter on February 26, 2020 with search terms, custodians, and date ranges for the UG to use in its search for documents responsive to RFPD No. 24.[11]

On April 1, 2020, the parties jointly requested an extension of deadlines due to the COVID-19 pandemic, which the Court granted in part in its Second Amended Scheduling Order.[12] The Second Amended Scheduling Order also extended Plaintiff's deadline to file a motion to compel with regard to her First RFPD, to May 29, 2020, which was earlier than the deadline Plaintiff requested. The Court noted that "Defendants served their responses to Plaintiff on January 17, 2020, so Plaintiff has had the responses for more than two months, including

---

[7] ECF No. 59.

[8] ECF No. 72-11 at 4, ¶ 5.

[9] *Id.* at 3, ¶ 1.

[10] ECF No. 60.

[11] ECF No. 72-13.

[12] ECF No. 64.

several weeks before the COVID-19 Stay-At-Home Orders took effect. Counsel should be able to confer and address issues regarding the discovery responses and objections at issue by telephone."[13]

Plaintiff filed her motion to compel on May 12, 2020. Plaintiff argues the UG has failed to conduct the additional searches she requested in her February 26, 2020 letter to the UG.[14] Plaintiff made five such additional requests: A, B, C, D, and E:

Request A:

Search terms: "Hardman," "Jordan Hardman," and "Jordan"

Custodians: the email accounts and computer files of all KCKPD personnel as well as the accounts and files of the UG's in-house counsel, Henry Couchman and Casey Meyer

Date range: July 28, 2016 to January 31, 2019.

Request B:

Search terms: "academy," "blow," "complain," "harass," "inappropriate," "oral," "Rios," "sex," and "transfer"

Custodians: the email accounts of all KCKPD personnel

Date range: January 20, 2015 to January 31, 2019.

Request C is not at issue in Plaintiff's motion.

Request D:

Search terms: none (produce all emails)

Custodians: John Turner, Rodney Smith, Steve Rios, Steven Kopp, Chris Blake, Mark Holland, Terry Ziegler, Racheal Botello, Lindsay Behgam, Tyrone Garner, Kevin Steele, Clinton Swan, George Sims, Angie Dreger, and Doug Bach

Date range: April 24, 2015 to April 28, 2015.

---

[13] *Id.* at 2.

[14] ECF No. 72-13.

Finally, Request E:

> Request: all emails between Terry Ziegler and Steve Rios for the time period of January 20, 2015 to January 31, 2019.

Plaintiff also argues that the UG has failed to produce an adequate privilege log. On March 2, 2020, the UG produced a privilege log listing 14 entries.[15] Each entry notes a redacted email with a description of or similar to "8/14/18 – Meyer e-mail – email correspondence Jordan Hardman – redacted (UG 006944)." The privilege log lists either the last name or the first initial and last name of the recipient. It also lists a privilege of either "confidential criminal history information for individual not related to this matter" or "attorney-client privilege and work product."

Plaintiff says she sent a follow-up email to the UG on March 3, 2020, stating the privilege log was incomplete and asking for confirmation that the UG was including the search terms Plaintiff requested in her previous letter.[16]

On March 13, 2020, the date the parties had agreed the UG would produce all emails responsive to Plaintiff's RFPD No. 24, including a final privilege log, counsel for the UG emailed Plaintiff's counsel objecting to many of the searches Plaintiff had requested.[17] Specifically, as to Request A, the UG argued emails from Henry Couchman and Casey Meyer were privileged because they are UG attorneys. The UG also objected to searching for "Jordan" because it had already searched for "Hardman" and "Jordan Hardman," and searching for "Jordan" would be duplicative. It also objected to searching for any dates after the date Plaintiff was terminated. The UG objected to Request B as unduly burdensome and not likely to lead to

---

[15] ECF No. 72-14.

[16] ECF No. 72-15.

[17] ECF No. 72-16.

relevant, discoverable, or admissible information. The UG indicated it has produced responsive emails from some of the custodians listed in Request D and that it was "still reviewing the other accounts."[18] Finally, the UG indicated it was conducting the search requested in Request E and that it would subsequently update its response. The UG makes many of the same arguments in its response to Plaintiff's motion to compel.

## II.   Legal Standard[19]

Fed. R. Civ. P. 26(b)(1) provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 34 allows for parties to serve document requests. A party objecting to a document request "must state whether any responsive materials are being withheld on the basis of that objection."[20]

Any party asserting attorney-client privilege or work product protection has the burden to show the privilege is applicable. Fed. R. Civ. P. 26(b)(5) states a party claiming privilege must (i) expressly make the claim and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. "Blanket claims of attorney-client or work-product protection do not satisfy the objecting party's burden

---

[18] ECF No. 72-16 at 2.

[19] The UG's response focuses only on the attorney-client privilege and makes no argument that the documents in dispute constitute work product or satisfy the essential elements for work product protection. Therefore, the Court will not set out the legal standard with regard to work product protection or address issues regarding work product in this Memorandum and Order.

[20] Fed. R. Civ. P. 34(b)(2)(C).

of proof."[21] Requests that seek only factual information do not seek information protected by the attorney-client privilege.[22]

Attorney-client privilege protects only communications between attorney and client, not the underlying facts.[23] "Neither the acts or services performed by an attorney during the course of his representation, nor the scope of representation, are within the attorney-client privilege because they are not 'communications.' Nor are 'general topics of attorney-client discussions' or ultimate 'legal conclusions' of counsel protected."[24]

Courts in this district have determined privilege logs must include: (1) a description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; (2) the date upon which the document was prepared; (3) the date of the document (if different from No. 2); (4) the identity of the person(s) who prepared the document; (5) the identity of the person(s) for whom the document was prepared; (6) the purpose of preparing the document; (7) the number of pages of the document; (8) the party's basis for withholding the document; and (9) any other pertinent information necessary to establish the elements of each asserted privilege.[25]

## III. Analysis

### a. The UG's objection to Plaintiff's RFPD No. 24

Plaintiff's RFPD No. 24 was not limited in time and only limited in scope insofar as it asked for all emails and text messages "concerning the factual allegations or claims at issue in

---

[21] *Linnebur v. United Telephone Assoc.*, No. 10-1379-RDR, 2012 WL 1183073, at *4 (D. Kan. Apr. 9, 2012) (citing *White v. Graceland College Center for Prof. Dev. And Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1267–68 (D. Kan. 2008).

[22] *See Barnhill v. Boilermakers Nat. Health and Welfare Fund*, No. 10-2619-CM-GLR, 2011 WL 5396064, at *3 (D. Kan. Nov. 8, 2011).

[23] *Id.*

[24] *Leftwich v. City of Pittsburg, Kan.*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *1 (D. Kan. Apr. 12, 2017).

[25] *Heartland Surgical S Specialty Hospital, LLC v. Midwest Division, Inc.*, No. 05-2164-MLB-DWB, 2007 WL 625809, *2 (D. Kan. Feb. 23, 2007).

this lawsuit" between Plaintiff and UG employees or UG employees "and any other person." The UG objected to this request only to the extent that it "asks for communications protected by the attorney client privilege or the work product doctrine." Plaintiff argues the UG has waived any additional objections it has to Plaintiff's subsequent requested search terms because it failed to assert any objections other than for privilege or work product protection to RFPD No. 24. The UG argues Plaintiff's subsequent requests constitute new requests, so the UG should not be limited by objections made to the initial requests.

When a party fails "to make specific legitimate objections to requests for production," the court may appropriately deem objections to those requests waived.[26] The UG's only objections to RFPD No. 24 were based upon privilege and work product protection. The Court finds the UG has waived all other objections to RFPD No. 24 and subsequent requests A, B, C, D, and E, including those based upon relevance and proportionality. The UG argues in its response to the motion to compel that RFPD No. 24 was an "expansive request" that has now been turned into "five expansive requests."[27] But the UG did not object to this "expansive request" as irrelevant, unduly burdensome, overly broad, or not proportional to the needs of the case. Indeed, rather than object to RFPD No. 24, the response actually stated that in addition to documents already produced, potential responsive emails were being reviewed and the response to the request would be supplemented. It is especially telling that the UG chose not to object to RFPD No. 24 for any reason other than privilege when it did assert additional objections to other requests, including RFPD No. 7, which requested "[c]opies of all text messages between any of Defendant Unified Government's current or former employees and Plaintiff." The UG objected to that request on

---

[26] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996) (citing *Casson Constr. Co. v. Armco Steel Corp.*, 91 F.R.D. 376, 379 (D. Kan. 1980)).

[27] ECF No. 79 at 1.

the basis of privilege as well as it not being limited in scope and time, making the request unduly burdensome and not proportional to the needs of the case.[28] The UG could have asserted the same objections to RFPD No. 24 but chose not to do so.

Moreover, the Court disagrees with the UG that Plaintiff's subsequent requests A–E constitute new discovery requests that were required to be in "proper RFP format and served pursuant to Rule 34."[29] The Court also rejects the UG's argument that these subsequent requests "are broader and expand upon the initial Requests for Production."[30] These subsequent requests were submitted after the parties agreed that Plaintiff would provide additional search terms and custodians once the UG disclosed the search terms and custodians it had been using to conduct its RFPD No. 24 searches. And, if anything, these subsequent requests narrowed Plaintiff's initial request. As previously discussed, Plaintiff's RFPD No. 24 was not limited in time and limited in scope only as to requesting emails between Plaintiff and UG employees, and UG employees and any other person. These subsequent requests *narrowed* the scope by requesting specific search terms, custodians, and date ranges.[31] Notably, the subsequent requests substantially reduced the field of potential custodians from all UG employees to only KCKPD personnel and in-house UG counsel. Therefore, having found that the UG has waived any objections as to relevance, proportionality or burden by failing to assert them in response to

---

[28] ECF No. 72-3 at 3–4.

[29] ECF No. 79 at 5.

[30] *Id.* at 4.

[31] To the extent Requests D and E request "all emails," the Court interprets and construes them as limited by RFPD No. 24 to all requested emails "concerning the factual allegations or claims at issue in this lawsuit."

Plaintiff's RFPD No. 24, the Court next considers Plaintiff's subsequent requests A–E and the UG's remaining objections to them.[32]

b.  Request A

The disagreements regarding Request A are whether the UG should conduct its document search using the search term "Jordan," whether the UG should have to search the email accounts of its in-house counsel, Henry Couchman and Casey Meyer, and whether the UG should have to expand its search beyond Plaintiff's termination date. Plaintiff argues the UG should use the search term "Jordan" because in some of the documents the UG has produced, Plaintiff is referred to only as "Jordan" rather than "Jordan Hardman" or "Hardman," both of which are search terms the UG has already used. She also argues that the UG cannot assert a blanket claim for attorney-client privilege simply because Mr. Couchman and Ms. Meyer are attorneys. And she argues the date range for the search should include dates after Plaintiff's termination.

The UG argues searching for "Jordan" would yield thousands of additional documents, many of which have already been produced through its previous searches. It also argues communications involving Mr. Couchman and Ms. Meyer are privileged because they were in-house counsel acting within the scope of their employment. Finally, they agree to expand the timeframe for the search but only to the date Plaintiff filed her EEOC complaint, which was August 10, 2018 (approximately five and a half months earlier than Plaintiff's request of January 31, 2019), arguing communications after that date would likely be privileged.

The Court finds with regard to Request A that the UG must search the custodians' email accounts and computer files using the search term "Jordan." The UG notes that searches of

---

[32] *See, e.g.*, *F.D.I.C. v. Benjes*, No. CIV.A. 91-2340-JWL, 1992 WL 792856, at *4 (D. Kan. Dec. 18, 1992) ("The court does find, nevertheless, that some of the interrogatories are so facially overbroad, oppressive and burdensome that the court will decline to enforce as to them a waiver of the otherwise untimely objections.").

"Hardman" and "Jordan Hardman" yielded almost 6,000 emails[33] whereas a search for "Jordan" yielded 33,260 emails.[34] But again, the UG has waived any objection that the search will be unduly burdensome by failing to assert such objection to RFPD No. 24. In any event, the UG argues only that Jordan is "a relatively common name" and will yield results for emails pertaining to "other UG employees named Jordan" or "any mention of any other person named Jordan who has ever been discussed in writing by UG employees."[35] However, the UG does not give any specific examples showing that there are other UG employees named Jordan, and the argument that Jordan is a "relatively common name" does not justify failing to conduct a search. If it did, no one would have to search for documents involving any person with a common name. Additionally, just because a search will produce more documents than are relevant does not excuse failing to conduct the search. Instead, the UG shall search for the term "Jordan" but the Court will require the UG to only producee those emails or other information pertaining to Plaintiff, rather than any other employee named Jordan.

The Court also finds with regard to Request A that the UG must search the email accounts and computer files of Mr. Couchman and Ms. Meyer (as well as all KCKPD employees) for the terms "Hardman," "Jordan Hardman," and "Jordan." Plaintiff argues that "[t]he UG refuses to even review Mr. Couchman's and Ms. Meyer's communications, claiming without explanation that 'any' communication they have about Plaintiff would be privileged."[36] The UG does not dispute this in its response. The UG does not argue that it did in fact search for all communications responsive to Request A involving Mr. Couchman and Ms. Meyer and that it

---

[33] ECF No. 79 at 7.

[34] *Id.*

[35] *Id.*

[36] ECF No. 72 at 14 (citing ECF No. 72-16).

has produced all responsive documents other than those listed in its privilege log. Instead, the UG's response focuses entirely on its claim, based upon "general" rules regarding the attorney-client privilege, that all communications of its in-house counsel, Mr. Couchman and Ms. Meyer, are privileged.

But the UG ignores its burden of proof, important limitations on the privilege, and most importantly the well-established rule that "[a] blanket claim as to the applicability of the privilege/work product protection does not satisfy the burden of proof."[37] For discovery purposes, the attorney-client privilege shields "communications between an attorney and client, made in confidence, under circumstances from which it may reasonably be assumed that the communication will remain in confidence."[38] The protection applies to communications with in-house counsel as well as outside attorneys.[39] However, for the privilege to apply, legal advice must predominate. "The privilege does not apply where legal advice is merely incidental to business advice."[40] Underlying facts do not become privileged by relaying them to an attorney.[41] The burden of establishing the applicability of the attorney-client privilege is on the party asserting it.[42] To satisfy this burden, the party "must describe in detail the documents or information sought to be protected and provide precise reasons for the objection to discovery."[43]

---

[37] *Lykins v. CertainTeed Corp.*, No. CIV.A. 11-2133-JTM, 2012 WL 3578911, at *8 (D. Kan. Aug. 17, 2012) (quoting *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No. 05–2433–JWL–DJW, 2007 WL 1347754, at *3 (D. Kan. May 8, 2007)).

[38] *Olson v. Shawnee Cty. Bd. of Com'rs*, No. 12-2084-JTM-KGG, 2013 WL 1151481, at *2 (D. Kan. Mar. 20, 2013) (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)).

[39] *Wagoner v. Pfizer, Inc.*, No. 07-1229-JTM, 2008 WL 821952, at *3 (D. Kan. Mar. 26, 2008).

[40] *Id.*

[41] *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)).

[42] *Id.*

[43] *Lykins v. CertainTeed Corp.*, No. CIV.A. 11-2133-JTM, 2012 WL 3578911, at *8 (D. Kan. Aug. 17, 2012) (quoting *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No. 05–2433–JWL–DJW, 2007 WL 1347754, at *3 (D. Kan. May 8, 2007)).

The party "must also provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied."[44]

The UG's blanket claim of privilege does not satisfy its burden of proof and certainly does not relieve it of the responsibility to search the emails and electronic files of its in-house counsel for information responsive to Request A. The Court will address the issue of whether the UG has waived the privilege and work product protection by failing to timely provide a privilege log, *infra*.

Finally, as to the relevant date range with regard to Request A, the Court finds the UG's suggestion of expanding the search to August 10, 2018 is appropriate. This is the date Plaintiff's EEOC complaint was filed and about two months after Plaintiff's termination date of June 13, 2018. Plaintiff has not made a sufficient showing of why seven months beyond her termination would be relevant. And the Court agrees with the UG that communications responsive to Request A that occurred after Plaintiff's EEOC complaint was filed would likely be privileged.

Therefore, the Court grants Plaintiff's motion to compel with regard to Request A in part. The UG shall add "Jordan" to its search terms and shall search the email accounts and computer files of all KCKPD personnel and Mr. Couchman and Ms. Meyer. The UG shall search the date range of July 28, 2016 to August 10, 2018.

c.   Request B

Plaintiff asks that the UG search nine additional search terms for the email accounts of all KCKPD personnel for the date range of January 20, 2015 to January 31, 2019. The UG objects, noting the search terms for that date range yielded 222,484 results.[45] Plaintiff offers that the UG

---

[44] *Id.*

[45] ECF No. 79 at 10–11.

could produce only emails that contain the word "Rios" plus one of the other eight search terms.[46] The UG does not seem to object to Plaintiff's proposal, instead noting only that "[s]uch an offer was lacking throughout the alleged Rule 37.2 compliance of Plaintiff's counsel."[47] And again, the UG has waived any objection as to proportionality. In any event, Plaintiff's proposal seems likely to significantly reduce the number of search results, and the UG does not argue otherwise.

The Court finds Plaintiff's proposal reasonable. Therefore the Court grants Plaintiff's motion to compel with regard to Request B in part and orders the UG to search the email accounts of all KCKPD personnel, for the date range of January 20, 2015 to January 31, 2019, for emails that contain the word "Rios" plus either "academy," "blow," "complain," "harass," "inappropriate," "oral," "sex," or "transfer."

d.  <u>Request D</u>

Plaintiff seeks all emails over a five-day period for 15 custodians. The UG states it has provided responsive emails from five of the 15 requested accounts. Additionally, it states it searched the accounts for six others and found no relevant emails. However, it states the accounts for Steve Rios, Tyrone Garner, and Kevin Steele "are inaccessible as those accounts have dropped off the servers."[48] The UG makes no mention of whether it has searched the account for Terry Ziegler.

The Court discussed the accounts of the three UG employees that "dropped off the servers" with the parties briefly during the August 7, 2020 status conference. Plaintiff claims the UG failed to preserve email accounts that were included in the initial preservation letter sent to

---

[46] ECF No. 72 at 16–17; ECF No. 80 at 13.

[47] ECF No. 79 at 12.

[48] *Id.* at 13.

the UG by Plaintiff's previous counsel in July 2018. The UG claims email accounts for KCKPD

personnel are automatically deleted 90 days after an employee's termination, and the July 2018

letter was received more than 90 days after Rios's termination, so his email account would have

already been deleted. The Court finds at this time the issues of whether Rios's email account was

properly preserved and whether the UG failed to preserve any other documents are not properly

before it, nor does the Court have sufficient information at this time to render a meaningful order

on preservation issues in this case.[49]

      With respect to Request D, the Court orders the UG to search the email account of Terry

Ziegler and produce all responsive documents (as limited by RFPD No. 24 pursuant to n.31,

*supra*). With respect to the other 11 custodians subject to Request D (not counting Ziegler and

the three custodians whose accounts have dropped off the server) the UG's response indicates all

"relevant" emails have been reviewed and produced. To be clear, irrespective of what the UG

considers relevant, if it has not already done so, the UG shall search for and produce all

responsive documents (as limited by RFPD No. 24 pursuant to n.31, *supra*) for these custodians

and Terry Ziegler.

    e.  Request E

      The final request at issue seeks all emails between Terry Ziegler and Steve Rios for the

time period of January 20, 2015 to January 31, 2019. The UG objects to the request as overbroad

and unduly burdensome. Although the Court has found the UG waived those objections by not

---

[49] During the August 7, 2020 status conference, Plaintiff's counsel also argued that the UG's counsel introduced an exhibit (and asked questions regarding it) at the conclusion of Larry Owens' deposition that should have been produced in response to RFPD No. 24, but was not produced. The Court has reviewed the Owens deposition transcript and exhibits that Plaintiff's counsel emailed to chambers and referenced in his argument. The Court, however, agrees with the UG that the referenced exhibits regarding preservation do not constitute communications "concerning the factual allegations or claims at issue in this lawsuit" that should have been produced in response to RFPD No. 24. Whether the exhibits are responsive and should be produced in response to Plaintiff's second request for production is not before the Court at this time and the Court will not address that question here.

raising them initially in response to RFPD No. 24 and in fact agreeing to produce emails that were not privileged, the Court sustains the UG's objection to Request E insofar as it requests "all" communications between Ziegler and Rios. The Court will limit this Request to the parameters of RFPD No. 24 and require the UG to produce all communications, including emails and text messages, between Ziegler and Rios concerning the factual allegations or claims at issue in this lawsuit. The Court will also limit the timeframe for this Request to the period from January 20, 2015 to the date Rios was terminated by KCKPD, December 31, 2018.[50] Plaintiff does not provide any justification for extending the timeframe beyond that date.

    f.   Privilege log

       During the August 7, 2020 status conference, counsel for the UG confirmed that the only privilege log the UG has provided to this point is the one attached to Plaintiff's motion as Exhibit M. This privilege log lists only 14 documents that have been redacted, not withheld. Plaintiff argues that the UG has waived its attorney-client privilege and work product protection with regard to *withheld* documents by failing to provide a privilege log. In response to the Court's inquiry during the August 7, 2020 status conference, the UG's counsel (while candidly acknowledging that he had not been the point person on document production) stated that he did not believe any responsive documents had been withheld by the UG on the basis of privilege or work product protection.

       But the briefing on this motion suggests otherwise. Plaintiff contends that the UG's in-house lawyers, Mr. Couchman and Ms. Meyer, were "directly" and "intimately" involved in the decision to terminate Plaintiff's employment.[51] In its response, the UG does not dispute this. In

---

[50] ECF No. 80 at 9.

[51] ECF No. 72 at 12–13.

fact, the Court reads the response as implicitly acknowledging that these in-house lawyers were involved in Plaintiff's termination and that communications involving Mr. Couchman and/or Ms. Meyer at or prior to Plaintiff's termination might not be privileged.[52] The only privilege log the UG has provided to date contains no entries dating back to the time of Plaintiff's termination for emails to which Mr. Couchman or Ms. Meyer were parties (either sender, recipient, or cc'ed), and in fact no entries at all referencing Mr. Couchman. Based upon the undisputed contentions in Plaintiff's memorandum in support of her motion and the documents cited therein that the Court has reviewed *in camera*, it appears clear there are documents responsive to RFPD No. 24, and specifically Request A, that the UG has neither produced nor identified on a privilege log.

Any party asserting attorney-client privilege or work product protection has the burden to show the privilege is applicable. Fed. R. Civ. P. 26(b)(5) states a party claiming privilege must (i) expressly make the claim and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Fed. R. Civ. P. 34 also requires a party objecting to a document request to "state whether any responsive materials are being withheld on the basis of that objection."

This Court has considered whether a party waives a claim of privilege or work product protection by failing to produce a proper privilege log:

> "A party who withholds discovery materials because of a claim of privilege or work product protection must notify the other party that it is withholding material. The party who withholds discovery materials must provide sufficient information, usually in the form of a privilege log, to enable the other party to evaluate the

---

[52] ECF No. 79 at 8 ("Plaintiff seems to assert that because Couchman and Meyer provided legal advice on Plaintiff's termination, there cannot be any privilege. Both Couchman and Meyer performed legal work on UG's EEOC response and entered their appearance and participated in this case before undersigned counsel entered. Therefore, any communications from Couchman and Meyer *after the date of Plaintiff's termination*, at the very least, constitute privileged communication due to the impending litigation.") (emphasis added).

> applicability of the privilege or protection. Failure to follow the
> Federal Rules of Civil Procedure may result in a waiver of the
> attorney-client privilege or work product protection. Although this
> result is not mandated by the federal rules, the Advisory
> Committee contemplated the sanction: [t]o withhold materials
> without [providing notice as described in Rule 26(b)(5)] is contrary
> to the rule, subjects the party to sanctions under Rule 37(b)(2), and
> may be viewed as a waiver of the privilege or protection.
> Acknowledging the harshness of a waiver sanction, however,
> courts have reserved such a penalty for only those cases where the
> offending party committed unjustified delay in responding to
> discovery. Minor procedural violations, good faith attempts at
> compliance and other such mitigating circumstances bear against
> finding waiver."[53]

Accordingly, as already discussed above, an objecting party's blanket claims of attorney-client or work-product protection do not satisfy its burden of proof. Yet, the UG ignored the express requirements of Fed. R. Civ. P. 26(b)(5) and Fed. R. Civ. P. 34 and chose instead to withhold responsive documents without properly identifying them on a privilege log or otherwise, based upon an ill-conceived blanket claim of privilege that is contrary to well-established law in this district.

The UG's privilege log was either due in January when the UG initially responded to Plaintiff's RFPD, or at the very latest on March 13, 2020, pursuant to the parties' agreement discussed during the status conference on February 14, 2020. Now, nearly five months after it agreed to provide a privilege log, the UG has still not attempted to supplement its privilege log to identify documents *withheld* on the basis of privilege. The UG clings to its improper blanket privilege claim, despite multiple inquiries and requests by Plaintiff for a proper privilege log and even after Plaintiff's memorandum cited authority showing the impropriety of the blanket privilege claim. Plaintiff's motion to compel is fully briefed and this order will be entered

---

[53] *White v. The Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F.Supp.2d 1250, 1266 (D. Kan. 2008) (internal citations omitted).

without the UG ever producing a privilege log for withheld documents or information. And, the August 31, 2020 discovery deadline in this case is now just three weeks away.

As noted in *White*, *supra*, the Advisory Committee Notes to Rule 26(b)(5) contemplate the sanction of waiver of the attorney-client privilege or work product protection when a party withholds discovery materials without providing sufficient information to enable the other party to evaluate the applicability of the privilege or protection. In *White*, the court also noted that because of the harshness of a waiver sanction, courts have reserved such penalty for cases where the offending party committed unjustified delay. Minor procedural violations or good faith attempts at compliance bear against finding waiver.

The Court finds the UG's failure in this case to produce a privilege log or to otherwise identify any documents withheld on the basis of privilege or work product protection is neither justified nor minor. The UG did not attempt in good faith to identify privileged documents withheld on the basis of privilege or work product protection in accordance with the rules. Under the circumstances in this case, the Court finds the sanction of waiver of the attorney-client privilege and work product protection is appropriate and warranted.[54] Thus, the Court finds the UG has waived its privilege or work product protection for any document responsive to RFPD No. 24 not included in the privilege log it produced on March 13, 2020. The UG shall produce all such documents responsive to RFPD No. 24 that were not previously produced *regardless of whether the UG believes such documents are entitled to privilege or work product protection.*

Plaintiff also contends that the privilege log of redacted documents that the UG produced on March 13, 2020 is inadequate. Plaintiff argues that the information provided on the privilege

---

[54] *See, e.g.*, *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Barclaysamerican Corp. v. Kane*, 746 F.2d 653 (10th Cir. 1984); *Rural Water Systems Ins. Ben. Trust v. Group Ins. Adm'rs, Inc.*, 160 F.R.D. 605, 607 (D. Kan. 1995).

log does not allow Plaintiff to determine whether the redactions are appropriate and that the privilege log fails to include the nine categories of information required in this District. The UG argues in its response that waiver is a severe sanction and is not warranted here, but does not address Plaintiff's arguments regarding the inadequacy of the privilege log that was provided.

The requirements for a privilege log in this district are well established. Specifically, privilege logs must include: (1) a description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; (2) the date upon which the document was prepared; (3) the date of the document (if different from No. 2); (4) the identity of the person(s) who prepared the document; (5) the identity of the person(s) for whom the document was prepared; (6) the purpose of preparing the document; (7) the number of pages of the document; (8) the party's basis for withholding the document; and (9) any other pertinent information necessary to establish the elements of each asserted privilege.[55]

The Court finds that the privilege log provided by the UG does not include all of the information required for the redacted documents listed on the log. It does not provide sufficient information to allow Plaintiff or the Court to determine whether the redactions are appropriate. The Court therefore orders that the UG supplement its privilege log with respect to the redacted documents listed on the log to include the nine categories of required information and in a manner that allows the Court and opposing counsel to ascertain whether the redactions are proper.

The Court notes the UG's responses to Plaintiff's second RFPD are due on August 11, 2020, and reminds the UG that any document it withholds due to privilege or work product must be properly logged on a privilege log in compliance with this Court's requirements.

---

[55] *Heartland Surgical S Specialty Hospital, LLC v. Midwest Division, Inc.*, No. 05-2164-MLB-DWB, 2007 WL 625809, *2 (D. Kan. Feb. 23, 2007).

g.   Confidential markings

As the Court understands it, Plaintiff raises two issues relative to this topic. First, Plaintiff claims all 1,300 pages of emails produced are labeled "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." Second, Plaintiff claims the UG has used the label "CONFIDENTIAL," which is not provided for in the Protective Order in this case, and without any basis for doing so. Plaintiff asks the Court to order the UG to reproduce any documents previously produced with a "CONFIDENTIAL" label, without that label.

The UG states it does not publicly list the email address of its law enforcement officers and staff, so all emails are confidential. Additionally, the UG's former counsel advised Plaintiff's counsel that the "CONFIDENTIAL" label is placed on all documents that leave counsel's office. However, the UG does not indicate whether that statement was or is still accurate. Additionally, the UG has informed the Court that it did not assert confidentiality based on attorney-client privilege or work product and it is not asserting that the documents simply marked "CONFIDENTIAL" are done so pursuant to the Protective Order or that they are protected by the Protective Order.

The Court agrees with Plaintiff that if the confidentiality of email addresses is the only reason the UG deems certain documents confidential, the UG should redact the email addresses. The Court also agrees with Plaintiff that the UG should not systematically label every email it produces in this case "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." The Court orders the parties to confer in good faith once more and work to resolve their dispute regarding the UG's labeling of emails and, if they are still not able to resolve the issue (or if the Court has misunderstood their dispute), to contact the Court to schedule yet another phone conference.

The Court also finds that the UG has shown no legal or other material basis for marking the documents it produces in this case "CONFIDENTIAL." The UG shall not label any documents it produces subsequent to this order "CONFIDENTIAL," and, to the extent any documents previously produced in this case are labeled "CONFIDENTIAL," such label shall be redacted before the documents are introduced as exhibits at any trial or hearing in this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Compel Document Production from Defendant Unified Government of Wyandotte County and Kansas City, Kansas (ECF No. 71) is granted in part and denied in part as discussed herein.

**IT IS FURTHER ORDERED** that all searches to be conducted by the UG pursuant to this Order shall be completed, all responsive documents shall be produced to Plaintiff (regardless of whether the UG believes they are privileged or work product protected), and the UG shall produce its revised March 13, 2020 privilege log with the additional information required by **August 17, 2020**.[56] This does NOT include any responses (including a privilege log) to Plaintiff's Second Requests for Production, which are still due **August 11, 2020,** pursuant to the Court's previous order.

**IT IS SO ORDERED.**

Dated August 10, 2020, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[56] The Court is mindful that this Memorandum and Order is being issued on August 10, 2020, Plaintiff has scheduled depositions in this case on August 11, 18, and 31, 2020, and the discovery deadline is August 31, 2020. Given these circumstances, if Plaintiff wishes to request an extension of the discovery deadline and other remaining scheduling order deadlines, the Court will be receptive to a reasonable request for extension.